# Henry Holmes *v.* S. J. Carman *et al.*, and Jesse W. Floyd *et al. v.* Henry Holmes *et al.*

A deed to land made by an agent authorized to sell and convey the same, but made in the *name of the agent* for his principals, is not a legal deed.   To make a conveyance binding, which is executed by an attorney or agent, the contract must be made and signed in the *name of the principal.*

A contract or conveyance made in the  name of an agent or attorney, and signed by him as for his principal, is not the  contract of the principal, and is binding merely upon the attorney.

Where the rigor of the commercial law is strictly enforced, to entitle the holder of commercial paper to retain the same, against the equities of third persons, it must appear that he came to the possession of it in the usual course  of trade, by having paid a valuable consideration without notice of the  equity or claim  of any third person. The reception of commercial paper as  collateral security for a pre-existing liability, or as an indemnity against ultimate liability, is not within the meaning of this rule.

If the holder of a negotiable note receives it in payment of a precedent debt, or takes it by way of indemnity against some responsibility incurred for his immediate indorser, without paying any present consideration therefor, he takes it subject to all the existing equities between the original parties.

Where an agent transferred the notes of his principal to his own indorser to indemnify him for an indorsement of such agent's own paper,—held, that the transfer conveyed no title to the notes, but that the title to the same remained in the principal of said agent.

By the statute of this state, the  purchaser of negotiable paper is placed on  the same footing with the original payee.  To protect the holder of a note against the *true owner* thereof, it is not alone sufficient that he paid a  valuable consideration therefor.   If, at the time of the transfer he had notice that it was a fraudulent appropriation of the note by the then holder, and that the right to it was in a third person, he will be decreed to deliver it up, or to account for its value or proceeds.

Where notes were  payable to *Carman* as *agent for Floyd*, held that this was sufficient notice to third persons that Carman was not the  owner of the notes, and had no right to transfer the same.   Whatever is sufficient to put a party upon inquiry, amounts, in equity, to notice.

The holder of a note who takes it with a knowledge that it  belonged to another, can stand in no better situation than the  purchaser of a  chattel who knew that the title was not in his vendor, but in a third person.

Henry Holmes *v.* S. J. Carman *et al,* and Jesse W. Floyd *et al. v.* Henry Holmes *et al.*

A purchaser of property from one holding it in trust, knowing that fact, becomes *ipso facto* a trustee, and is liable to the *cestui que trust* to the same extent as the original trustee.

On the 4th of February, 1834, J. W. Floyd, Nathaniel Smith, Sarah Smith, Joel Post, Abner Post, Allison Post, and Elizabeth Post, executed a power of attorney to one Charles A. Floyd, authorizing Floyd to sell and convey certain land of the grantees, or to appoint some other person to convey said land. Under this power of attorney, Charles A. Floyd appointed one Samuel J. Carman his attorney in fact, for the purpose above stated, by written power of attorney. On the 15th day of October, 1835, Carman sold the land to one Henry Holmes, for the sum of 7021 dollars, to be paid in three annual instalments, of the same amount each, for which Holmes executed his promissory notes, payable to Charles A. Floyd. Carman executed a deed for the land sold to Holmes in *his own name*, as agent and attorney of the actual owners, or vendors. Carman, without the knowledge or authority of the parties for whom he was agent, passed the notes off to one Johnson, who brought suit on two of the notes, obtained judgment, execution and a forthcoming bond, which was forfeited, and a judgment taken thereon. Soon after this Holmes ascertained that he had not a legal conveyance of the land. In the mean time, Carman had left the state. Holmes filed his bill against Johnson, making the owners of the land parties to the same, charging that Johnson had obtained the notes without consideration, and that the transfer of Carman passed no title to the same. The bill prays the original owners of the land may be compelled to make a good title to Holmes, and in default thereof that the said judgments be perpetually enjoined and the notes delivered up and cancelled.

J. W. Floyd, Nathaniel Smith, Joel Post, Abner Post, Allison Post, Elizabeth Post, and Sarah Smith, who were made defendants to this bill, then filed their cross bill against Holmes and Johnson, wherein they charge the same facts as stated by Holmes in his bill, but say that the notes of Holmes were made payable to *Samuel J. Carman, "agent of Charles A. Floyd;"* that Carman, for the purpose of indemnifying Johnson against some liability as surety of Carman, incurred long before the indemnity was given, transferred said notes to Johnson, together with divers other notes

of complainants in the cross bill; that Johnson knew when he received these notes that they were not the property of Carman, but that the same were the property of said complainants, and that Carman had no authority to transfer the same. They pray that Johnson may render a list of said notes, and be compelled to deliver the same to them, and that Holmes pay the said judgment to them also, instead of Johnson; upon receiving from them a valid conveyance of the land.

Subsequent to this, the complainants in the cross bill filed two amended bills, wherein Carman is made a party, and Johnson is called to discover the consideration he gave for said notes, and if he did not know at the time he received them that they were the property of complainants.

Johnson, in his answer to the original bill of Holmes, admits the execution of the power of attorney as alleged, and that the title to the land was in Charles A. Floyd *et al.*; admits that Holmes purchased said land, gave his notes for same as charged by him, but says, one of said notes was made payable to Carman, and the other two to Carman, agent of C. A. Floyd; that Carman indorsed and transferred said notes to him for the purpose of securing him in part against liabilities which he was under as indorser for said Carman to the amount of 13,000 dollars, and of which he has since paid about 7000 dollars, the balance being due and unpaid, and that respondent will be compelled to pay said balance. He denies all fraud, and insists that he has the legal and equitable title to the notes; that Holmes is in undisturbed possession of the land, and if his title is defective he calls on the court to make it good.

In his answer to the cross bill he reiterates the above; says said three notes were for the sum of $2,343 33-100 each; denies that he knew any thing about the orginal consideration of the notes; says that at the time he received them Carman was leaving the state, respondent overtook him, and Carman then delivered the notes for the purpose aforesaid; admits that he received other notes and securities from Carman at the same time, but denies all knowledge of the consideration given by Carman for the same, but that he received them all in good faith, believing them to be the property of Carman.

Henry Holmes in answer to the cross bill admits all its allegations, and says that when his first note fell due the same was payable, like the other two, to Carman as agent of Floyd. Carman extended the time of payment on a renewal of the note, to which Holmes agreed; Carman presented the renewed note as payable to himself, to which Holmes objected; but Carman insisted upon it, saying it would make no difference, and Holmes therefore executed the note in that form.

The deposition of Henry Holmes was taken by the complainants in the cross bill, wherein he states the same fact relative to the renewal of that note, and also that Johnson told him that he received said three notes from Carman as collateral security. Holmes told him they belonged to the heirs of Floyd. Johnson said he did not care a damn who they belonged to, so that he got the money, and that he had taken other notes from Carman as collateral security to the amount of 40,000 dollars.

WILKINSON & MILES for complainants.

This cause comes to hearing on the original and cross bill and amended cross bill, and exhibits thereto. The answer of Johnson to the original and cross bill, the answer of Holmes to the cross bill; and on the deposition of Holmes, taken under an order of this court, which is the only deposition in the cause.

The object of the two suits is to determine the right to the proceeds of three promissory notes executed to Carman, as agent of complainants in the cross bill, by Holmes, for land sold by Carman to Holmes as agent of complainant in the cross bill; and which were afterwards delivered over to Johnson by Carman, to indemnify him (Johnson) against certain liabilities he had incurred for Carman, as his indorser or surety. Two of the notes are admitted by Johnson's answer to have been made payable to Carman as agent of Floyd; and the other it is proved by the deposition of Holmes was originally executed in the same manner, but was afterwards changed at the solicitation of Carman, and before it was handed over to Johnson. It is admitted by Johnson, that all the notes were received by him at the same time; that they bear the same date, and are for about the same amount. It is also stated by Johnson that he went in pursuit of Carman, when he was abscond-

ing from the county, and got possession of the notes in that way. This is a synopsis of all the material facts, and the question of law is, whether Johnson, under the circumstances detailed, is entitled to these notes or their proceeds.

The proposition or principle that the holder of negotiable paper acquired from an agent, *bona fide* " in the usual course of trade " and for a " valuable consideration," is entitled to hold the same against the real owner, is not denied. This is a rule of commercial law adopted for the security of trade.

But it is contended by us, that the requisites above named must concur in every transfer of negotiable paper, by an agent, to make such transfer obligatory upon the principal. None of these, however, are to be found in this case. The transfer was clearly *"mala fide."* That both Carman and Johnson intended a fraud upon the Floyds is clear from the proof in the cause. The very appearance of two of the notes upon their face, was enough to have raised a suspicion in Johnson's mind, and to have led him to make enquiry of the drawer Holmes, who it appears from the record in this case, lived in the same county with Johnson. 6 Yerger, 387; 5 Wen. 566 ; 8 Ib. 437 ; 3 Pick. 5–298.

Further, the notes were not taken " in the course of trade." They were seized upon by Johnson as *tabula in naufragio,* to protect him from liabilities incurred as the surety of Carman. They were taken as collateral securities, and did not by their transfer effect any exchange of commodities between the parties. Surely the security of trade does not require that the holder of negotiable paper acquired under circumstances such as these should have a right to retain it.

It will be insisted, perhaps, that the maxim *" in equali jure, melior est conditio possidentis"* will apply to this case. But it does not. For the equities are not equal as between Johnson and Floyd. Floyd has parted with his land for these notes. Johnson has parted with nothing for them. Floyd's fortune will be diminished by their amount if he loses them. Johnson if he loses them, cannot be worse off by it, than he was when he seized upon them.

Although many of the cases which arise in the courts, are pretty well settled by the analogies of the law, it is not often the case that they are controlled by directly adjudged precedent. This

case, however, is completely covered by a most respectable decision in which the facts were almost identical with these. Bay *v.* Coddington, 5 J. Chy. Rep. 54. The matter being "*res integra*," an appeal was taken, and the decree of the chancellor affirmed by the court of errors. Coddington *v.* Bay, 20 J. R. 637; see also 9 Wendall, 170; 10 Ib. 85; 11 Ib. 533; 12 Ib. 600; 13 Ib. 570–605; 1 Paige 131; 4 Ib. 205; 6 Serg. & Rawle, 537; 4 Binn. 366; 6 Conn. Rep. 521.

There is one other difficulty in this cause, the defective title of Holmes. If the court shall think the land defectively conveyed, it has the right to aid the defective execution of a power. And we are willing that a commissioner of this court shall be directed to convey all the interest and title of complainants in the cross bill to Holmes. Or that the commissioner may execute any kind of a deed (with or without covenant,) that the court may direct. The original bill will of course be taken for confessed as against complainants in the cross bill; as they are in court, and have not answered; and a decree will not be delayed on that account.

BROWN for defendant Johnson.

This cause is set for hearing by complainants in cross bill, upon the original bill, cross bill, the answer of defendant Johnson, exhibits, the deposition of Holmes, and the answer of Holmes to cross bill. The complainants in the cross bill have never been served with process, nor have they answered the original bill of Holmes. The death of defendant Carman has been suggested, and discontinued as to him.

The principal contention in the suit is between the complainants in the cross bill and defendant Johnson, with regard to the right to three promissory notes which complainants in cross bill allege the defendant Carman obtained for the sale of land as their agent; which said notes were transferred by the said Carman to defendant Johnson.

The answer of Johnson to the cross bill states that he obtained the said notes from Carman in good faith, to secure himself against liabilities which he had incurred for Carman to a large amount, and that he had no knowledge at the time he received the notes from Carman of their consideration, and that he fully be-

Henry Holmes *v.* S. J. Carman *et al.,* and Jesse W. Floyd *et al. v.* Henry Holmes *et al.*

lieved that the said Carman was the owner of the notes, and had good right to transfer the same, and that he had since paid for Carman seven thousand dollars.

The deposition of Holmes only proves that Johnson said he received the notes from Carman as collateral security, and that he gave them to said Carman, as agent of the plaintiff in cross bill.

It is contended for Johnson that he obtained the notes for a fair and valuable consideration, without notice of any claim or interest in the same by complainants in cross bill, and has also paid about seven thousand dollars for Carman, whereby Carman actually became his debtor. That he (Johnson) ought, according to a long and well established rule of commercial law, to hold the said notes against the said Floyds and others; that Floyds *et al.* had placed it in the power of Carman to commit the fraud and they should therefore be the sufferers.

2. Carman or his representatives are not now parties to this suit, and their interests may be materially affected by the decree. They might be able to show that Carman in his lifetime had authority to transfer the said notes, or Carman or his representatives may have fully satisfied the complainants in the cross bill.

3. It is contended that by the rules of this court they cannot avail themselves of any advantage by their cross bill until they answer the original bill of Holmes; for their answers may admit the authority of Carman to transfer or pledge the notes, or that they have since received full satisfaction from Carman. This great contention about the notes seems to have arisen since the death of Carman, and it may be that they are trying to obtain these notes through the aid of this court, when they have no right to the same. Their cross bill and amendments are not sworn to; and it is also contended that they (the Floyds *et al.*) have not sufficiently made out their right and title to said notes, so as to authorize this court to order a change of property in them.

WILLIAM THOMPSON for Johnson.

In addition to the above brief, we contend that the deposition of Henry Holmes (which was taken subject to exceptions) is not

competent testimony in the cause, for he is a complainant in the cause, and a party interested.

### THE CHANCELLOR.

Holmes purchased a tract of land from the defendant Carman, who acted as the agent of the defendants, Floyd and others. The land was to be paid for in three annual instalments, for which Holmes gave his three several promissory notes, and received from Carman a deed signed by himself as agent for Floyd. The notes so taken were transferred by Carman to the defendant Johnson, to indemnify him against certain liabilities he had incurred as Carman's indorser. These facts are set forth in the bill of Holmes, upon which he obtained an injunction, restraining Johnson from the collection of the notes. The bill makes Floyd and others parties, and prays for a perfect title to the land; or, if that cannot be had, for a rescission of the contract. Floyd and others filed their cross bill, making Holmes the complainant, and Johnson and Carman defendants, to the original bill, also defendants to the cross bill. They propose to do whatever is necessary to perfect the title of Holmes to the land, so bought from their agent, and pray that the notes or their proceeds, which were fraudulently transferred by their agent, Carman, to Johnson, may be decreed to them as the real owners. The several answers contain an admission of the foregoing statement of facts.

The deposition of Holmes, to the admissibility of which I perceive no objection, proves clearly that the notes in question were the property of Floyd and others, the complainants in the cross bill.

I can have no doubt of the right of the complainant in the original bill to call for a further conveyance from the complainants in the cross bill, to perfect his title to the land which he bought of them through their agent. The deed is executed in the name of Carman as attorney in fact for his principal. This is not sufficient. To make a conveyance binding which is executed by an attorney or agent, the contract must be made and signed in the name of the principal. A conveyance made in the name of an agent or attorney, and signed by him as for his principal, is not the contract of the principal, and is binding merely upon the attorney. Spen-

cer *v.* Field, 10 Wend. Rep. 87; Copeland *v.* Mercantile Ins. Co. 6 Pick. R. 302.

The principal question to be decided is, who has the best right to the notes which were given by Holmes for the payment of the land? The complainants in the cross bill urge their claim upon the ground that they are the true owners; that the notes were given for their property, and that they were fraudulently transferred by their agent to Johnson, who they allege paid no valuable consideration therefor, either in money or property. On the other hand, Johnson insists that he obtained the notes in good faith, they having been transferred to him by Carman by way of indemnity against his liability as Carman's indorser; that he took them without any notice of the claim of Floyd and others; and insists that he is entitled to hold them, according to the rules of commercial law.

It is true the policy of the laws of commerce have thrown around commercial paper, in the hands of a *bona fide* holder, who has taken it in the usual course of trade, a sort of immunity against assault from whatever quarter it may come. The fitness and propriety of this rule in a strictly commercial community, have been very generally admitted. The legislature of this state have, however, thought fit to abolish this feature of the commercial law, and to place the purchaser of negotiable paper upon the same footing with the original payee, clothing him with the same rights, and subjecting him to the same equities, which attached in favor of, or existed against the payee himself. How. & Hutch. Dig. 373, sec. 12. But even where the rigor of the commercial law is strictly enforced, to entitle the holder of commercial paper to the immunity which Johnson here claims, it must appear that he came to the possession of it in the usual course of trade, by having paid for it what the law deems a valuable consideration, without notice of the equity or claim of any third person. The commercial rule in this particular follows the general analogies of the law, and gives protection only to the *bona fide* purchaser, without notice, who has parted with money or property upon the faith of his purchase. Hence, if the holder of a negotiable note receives it in payment of a precedent debt, or takes it by way of indemnity against some responsibility incurred for his immediate

indorser, without paying any present consideration therefor, he takes it subject to all the existing equities between the original parties. Rosa *v.* Brotherson, 10 Wend. Rep. 85; and Bay *v.* Coddington, 5 John. Ch. R. 54.

In the case of Collins *v.* Martin, 1 Bos. & Pull. 651, chief justice Eyre says "if it can be proved that the holder gave no value for the bill, then indeed he is in privity with the first holder, and will be affected by every thing which would affect the first holder." In the case before me, Johnson received the notes without paying any new consideration for them; he parted with neither money nor property; nor did he incur any new responsibility on account of the transfer to him; he was not yet even a creditor of Carman, not having then paid any portion of the money for which he was liable as Carman's indorser. Although that liability was sufficient to support the transfer of the notes as between Carman and Johnson, it is not sufficient to overreach the superior equity of the complainants in the cross bill, who are the true owners of the notes. Coddington *v.* Bay, 20 John. Rep. 637.

It would seem, then, that Johnson is not a holder of the notes in question, for a valuable consideration in the sense which would entitle him to hold them discharged from the claim of those to whom they equitably belong. To protect the holder of a note against the true owner, it is not alone sufficient that he paid a valuable consideration therefor. If at the time of the transfer to him he had notice that it was a fraudulent appropriation of the note by the then holder, and that the right to it was in a third person, he will be decreed to deliver it up or to account for its value or proceeds. Had Johnson such notice at the time he received the notes from Carman? It is admitted that at least two of the notes were upon their face payable to Carman as agent for Floyd and others. This, while it gave notice that Carman was the mere nominal holder of the notes, at the same time gave information who were the substantial and equitable owners. That feature of the transaction was, of itself, sufficient to have awakened distrust as to Carman's right to the notes, and to have excited such inquiry as would have led to a knowledge of the true owners. Whatever is sufficient to put a party upon enquiry, amounts in equity to notice. Smith *v.* Law, 1 Atkins, 489; Daniels *v.* Davidson, 16 Ves. 250.

The holder of a note who takes it with a knowledge that it belonged to another, can stand in no better situation than the purchaser of a chattel who knew that the title was not in his vendor, but in a third person. Looking to the equity of the respective parties claiming the notes, I can have no doubt how I should decide between them. It is apparent from the facts disclosed in the case, that Johnson did not become the indorser of Carman upon the faith of his being the owner of the notes. I infer that they were not even in existence at the time of such indorsement. It is clear, then, that no reliance was placed upon the notes as a means of enabling Carman to afford protection to Johnson against his indorsement. To take them from him, therefore, withdraws no means to which he had a right to look as a source of indemnity against his contingent liability. The case is widely different as to the other parties. If they lose the notes, they are deprived of what they expressly contracted for, and upon the faith of which they agreed to part with the title to their land. The transfer of the notes by Carman was a most fraudulent breach of his trust; and there is strong reason to believe that Johnson must have known from the face of the notes that Carman held them in trust. If this were evident, there could be no doubt about Johnson's liability to account for the notes or their proceeds. It is a well settled principle in equity, that a purchaser of property from one holding it in trust, knowing that fact, becomes *ipso facto* a trustee, liable to the *cestui que trust*, to the same extent as the original trustee. From every view which I have been able to take of the case, I am of opinion that Johnson did not acquire any title to the notes in question as against the complainants in the cross bill. I shall accordingly declare that Johnson shall deliver over the notes, if he has any, and if collected that he account for the proceeds; that Floyd and others be permitted to prosecute for their use the judgment recovered against Holmes, in the name of Carman, and that a commissioner be appointed to make title to Holmes of the land bought from Carman as agent. Let the case be referred to a commissioner to report, &c.